489 P.2d 1310

STATE of Idaho, Plaintiff-Respondent,

v.

Lawrence C. THOMAS and Larry Drapeau,
Defendants-Appellants.

Nos. 10704, 10705.

Supreme Court of Idaho.

Oct. 20, 1971.

**432**

Weeks & Davis, Nampa, for appellant, Lawrence C. Thomas.

Smith & McDonald, Nampa, for appellant, Larry Drapeau.

Robert M. Robson, Atty. Gen., and Martin R. Ward, Deputy Atty. Gen., Boise, C. Robert Yost, Prosecuting Atty., Caldwell, for appellee.

SHEPARD, Justice.

This is an appeal from a judgment of conviction of second degree murder following a jury trial and verdict of guilty. Defendants were charged with the crime of first degree murder resulting from the killing of one John C. Combs, a Parma city policeman, in the early morning hours of September 22, 1969. Combs and his companion, Wong, had received a radio report of an attempted robbery and discovered a parked car in a remote farm area of Canyon County. Combs left the police vehicle and approached the parked automobile on foot. When he reached the automobile he was immediately killed by a shotgun blast from the car. Two or more men got out of that car and approached the police vehicle at which time Wong attempted to hide on the floor boards. Several more shotgun blasts were fired into the interior of the police vehicle wounding Wong. The men then dragged him from the police car and drove it away, later wrecking it in a ditch. The only person that Wong could identify in the killing of Combs and wounding of himself was one Williams.

Shortly after the killing of Combs and the subsequent wrecking of the police car, that vehicle was discovered by other police officers who had no knowledge of the shooting incident nor of the theft of the police car. As the officers arrived at the scene of the wrecked vehicle, Williams was observed climbing up from a canal bank and shouting "Frank, Frank, I want to give up." The officers asked "What happened to John Combs?", and Williams replied, "We shot him and his partner too."

The defendant Drapeau was apprehended at the scene of the wrecked police vehicle. Defendant Thomas was found in a car parked in a shed close to the accident scene. A search of that shed revealed three shotgun shells of the same gauge and shot size used in the murder of Combs and the wounding of Wong. Williams, Thomas and Drapeau were all charged with the murder of Combs, but Williams died of natural causes prior to trial. Other factual aspects of the case will be discussed infra as they are pertinent to appellants' assignments of error.

Defendants first allege that the court below erred by refusing to grant a defense motion for a change of venue. The ground cited for the motion was the adverse publicity which allegedly led to public prejudice against the defendants in Canyon County wherein the trial took place. A newspaper item on the day following the slaying which contained the headline, "Shotgunner slays Parma policeman," coupled with a picture of the defendants and a picture of the slain policeman is alleged to have been highly prejudicial toward the defendants. Defendants also allege that a public and successful fund drive for the widow of the slain policeman led to community prejudice against them. They contend that it was impossible for them to receive a fair trial in such an atmosphere and that a change of venue should have been granted.

It is clear that the granting of a change of venue lies within the discretion of the trial court and where it appears that the defendant actually received a fair trial and that there was no difficulty experienced in selecting a jury, refusal to grant a change of venue is not a ground for reversal. State v. Bitz, 93 Idaho 239, 460 P. 2d 374 (1969); State v. Cypher, 92 Idaho

159, 438 P.2d 904 (1968). Our statutory requirement is that the jury not receive "any evidence out of court other than that resulting from a view of the premises * * *." I.C. § 19-2406. The record herein indicates that none of the sitting jurymen were challenged for cause. The defense exercised only nine of its preemptory challenges. As we stated in *Bitz:*

> "If appellant were dissatisfied with the jury and believed that any juror was prejudiced against him, he should have raised the issue by challenging that juror for cause. His failure to do so indicates a satisfaction with the jury as finally constituted."

■■ Defendants rely on the cases of Sheppard v. Maxwell, 384 U.S. 333, 86 S. Ct. 1507, 16 L.Ed.2d 600 (1966), and Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). We note that the carnival atmosphere present in those cases is nonexistent in the case at bar. As was stated in *Sheppard,* the most important of the constitutional requirements in the area of protection against pre-trial publicity is that the "jury's verdict be based on evidence received in open court, not from outside sources." Where such circumstances do not exist as would show inherent probability of prejudice, the accused has the burden of showing essential unfairness as a demonstrable reality. Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S. Ct. 236, 87 L.Ed. 268 (1942). There has been no showing by the defendants of any essential unfairness as a demonstrable reality or that the jury's verdict was probably based on evidence received from outside sources and not received in open court. While the newspaper article may have been inflammatory, there is no showing that the publicity engendered by the murder and the alleged community outrage was so widespread and finely directed at the defendants that it was impossible or even improbable to obtain a fair trial. As the court has said:

> "* * * it is not sufficient merely to show that prejudice exists against the

accused; it must appear that the prejudice against him is of such magnitude as to prevent him from receiving a fair and impartial trial; and where the evidence before the court is conflicting, its decision will not be reversed upon appeal." State v. Cypher, supra, 92 Idaho at 166, 438 P.2d at 911.

See also State v. Polson, 92 Idaho 615, 448 P.2d 229 (1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2129, 23 L.Ed.2d 765.

■■ Defendant Thomas assigns as error the ruling of the trial court admitting in evidence those shotgun shells found in the shed where he was apprehended. The shells were shown to have been the same gauge, shot size and brand name as those used in the homicide and identical to the type purchased earlier in the same evening by the defendants. It is alleged that these shells should not have been allowed in evidence since they were not found on Thomas' person or in the car in which he was found. The finding of the shells in the shed where Thomas was apprehended was of sufficient probative value to circumstantially implicate Thomas in the perpetration of the murder. There is no requirement that weapons or bullets offered in evidence be positively identified as those used in the perpetration of a crime. The admission of such evidence is within the sound discretion of the trial court and any objection to the lack of positive identification goes to the weight of the evidence rather than to the admissibility of the article. State v. Rodriguez, 93 Idaho 286, 460 P.2d 711 (1969). There is no showing as contended by the defendant Thomas that the evidence was so inflammatory that the emotional impact outweighed the possible evidentiary value of the exhibits.

■ Defendant Drapeau assigns as error the ruling of the trial court admitting into evidence a shoe which Drapeau was wearing at the time of his arrest and a matching shoe which was found in the wrecked police vehicle. There was ample testimony from an expert witness that the shoes had common wear characteristics and

his opinion was that the two shoes could have been a pair. Any objection thereto went to the weight of the evidence, not to the admissibility of the exhibits.

Both defendants assign as error on the part of the trial court its ruling admitting testimony containing reference to other crimes or possible crimes committed by the defendants during the course of the evening prior to the homicide, during the homicide, or shortly thereafter. That testimony concerned the fact that the automobile from which the fatal shotgun blast was fired was stolen earlier in the evening from a used car lot and that the shotgun was stolen from the office of the used car lot. Additional testimony related to the possible attempted theft of a pickup from a motel and the identification of the defendants as participants therein. Objection was also made to testimony surrounding the shots fired at Wong in the police car and the theft of the police car. We note that no objection was made at trial to the testimony now assigned as error. All of such evidence was probative of the participation in the events of that evening leading up to and culminating with the killing of Combs and the wounding of Wong and the theft of the police car. All such testimony was probative of the guilt of the defendants of the ultimate crime charged. Defendants did not assert at trial nor do they assert here that the relation of the events in question by the witnesses who testified are untrue. We know of no rule of law that requires the State to so restrict its proof when the evidence which is so highly probative of the crime charged also reveals the commission of other crimes. If the evidence has no real bearing on the guilt or innocence of the accused and would be highly prejudicial, then such of course should be excluded. Such is not the case herein. State v. Wilson, 93 Idaho 194, 457 P.2d 433 (1969); State v. Cypher, supra.

Defendant Drapeau assigns error to an instruction of the trial court on the standards for justified or excusable homicide in the event that the prosecution had proven the commission of a homicide by the defendants beyond a reasonable doubt. Drapeau contends that such instruction shifted to him the burden of proof as to his innocence which of course would be contrary to the presumption of innocence. The instruction given by the trial court clearly limits its applicability to a situation where the commission of a homicide has been proved beyond a reasonable doubt and then goes on to set forth the standards of proof of mitigation. The instruction is a correct statement of law and has been specifically approved heretofore. State v. Burris, 80 Idaho 395, 331 P.2d 265 (1958).

Defendants, and in particular Thomas, assign error to certain instructions of the trial court wherein the use of the word "defendants" allegedly created prejudice against defendant Thomas. It is contended that the utilization of the plural "defendants" necessitated the jury finding both defendants guilty, or both defendants innocent, rather than providing an opportunity for the jury to find the defendant Thomas innocent even though it might have found the defendant Drapeau guilty. We reject the contention of defendants since a reading of the instructions as a whole militates against defendants' contentions.

Defendant Thomas further assigns error to the giving of other instructions by the trial court wherein the court set forth standards on confessions and admissions. Thomas contends that those instructions gave to the jury the impression that certain statements made by Thomas were confessions. No reasonable reading of the instructions as a whole would lead to the impression that Thomas had made a "confession" or even admissions but rather merely sets forth the standards, safeguards and guidelines as to any admissions or confessions made by either defendant.

Defendant Thomas contends that still another instruction of the trial court to the jury constituted reversible error. That instruction informed the jury that if

the defendant Thomas had not been shown to be present at the time and place of the commission of the crime, Thomas was entitled to be acquitted. Thomas contends that the instruction implies that if he were present at the scene of the crime he was guilty. We reject this as being an unreasonable reading of the instruction and calling for complete and total disregard of the other instructions and the testimony of Thomas in which he claimed to have been present at the time of the ultimate wrecking of the police car but not at the homicide.

It is clear that the defendants have shown no prejudicial error in any of the instructions of the trial court as given to the jury. We note also that defendants at the trial failed to request instructions of the trial court and failed to make or preserve any objections to the instructions as given by the trial court at the time of trial. Error will not be presumed upon appeal but must be affirmatively shown by appellants. State v. Polson, supra; State v. Peterson, 87 Idaho 147, 391 P.2d 846 (1964). With limited exceptions error at trial must be properly objected to and preserved to merit review upon appeal. Johnson v. United States, 361 F.2d 447 (9th Cir. 1966), cert. denied, 385 U.S. 976, 87 S.Ct. 516, 17 L.Ed.2d 439; Stevens v. United States, 256 F.2d 619 (9th Cir. 1958).

The most serious contentions of defendants result from their assignments of error which claim that certain statements made by Williams, by Drapeau, and by Thomas were erroneously admitted in evidence and that the admission of those statements constituted reversible error. We first examine the contentions of defendants regarding the admission of evidence pertaining to statements made by Williams at the scene of the wrecked police vehicle. Defendants contend among other things that Williams' statements must be excluded because of non-compliance with the standards and requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo

v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). *Miranda* and other contemporary cases establish that once a suspect has been taken into custody or otherwise deprived of his freedom, he must be warned of his rights and advised of constitutional privileges regarding counsel, etc. State v. Ross, 92 Idaho 709, 449 P.2d 369 (1968). None of the cases such as *Miranda, Escobedo* or their progeny were intended to prohibit the voluntary and spontaneous statements of persons who have not been taken into custody, detained in some manner or singled out from the common mass for special interrogation or other accusatory actions nor toward whom any investigation has begun to specifically focus. The record is clear that when the officers arrived at the scene of the wrecked police vehicle, they had no knowledge that a homicide had taken place, they had not placed and were not placing Williams and Drapeau in custody, nor were Williams nor Drapeau in any way detained prior to Williams' completely voluntary statements. No focus of attention on Drapeau and Williams had taken place since the commission of the homicide was not even known to the officers. No opportunity was available to the officers to advise Williams and Drapeau of any constitutional rights. When the officers came upon the scene of Combs' wrecked vehicle, they very logically and understandably were concerned with Combs' whereabouts and asked Williams "What happened to John Combs?" at which point the completely voluntary statement of Williams "We shot him and his partner too," was made. No error resulted from the introduction of evidence regarding Williams' statement.

Defendants also assert that error was committed by the trial court in the admission of evidence as to the statements Williams made at the scene of the wreck since such statements constituted hearsay and thus were properly inadmissible. We note initially that the United States Supreme Court has not, as yet, sought to prohibit the introduction of evidence of statements made by a co-actor to the commis-

sion of a crime solely on the basis that such statements were hearsay even though they might fall into a well recognized exemption or exception to the hearsay rule. Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). We note also that Williams was not a co-defendant, having been deceased prior to trial and therefore this case cannot be deemed to fall within the confines of cases such as Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); United States v. Weber, 437 F.2d 327 (3rd Cir. 1970), cert. denied, 402 U.S. 932, 91 S.Ct. 1524, 28 L. Ed.2d 867 (1971). We are not required to decide in this context whether or not the rule as to the admissibility of the statements of a co-conspirator to a crime extends only to the actual commission of the crime or beyond to the time of attempted concealment of the crime by a co-conspiracy. It will suffice to say herein that our well established rules in past cases regarding exceptions to the hearsay rule such as spontaneous statements, res gestae and declarations against interest fully support the trial court's action in admitting the evidence of the statements made by Williams at the scene of the wrecked police vehicle. State v. Bock, 80 Idaho 296, 328 P.2d 1065 (1958); State v. Radabaugh, 93 Idaho 727, 471 P.2d 582 (1970); State v. Hopple, 83 Idaho 55, 357 P.2d 656 (1960).

■ We turn now to the contention of defendant Thomas that the court committed error in admitting testimony of statements made by him after he had been apprehended and taken into custody. It should first be pointed out that the statements made by Thomas, while in custody, were oral and were ultimately related by the sheriff first to the court in the absence of the jury, and then as testimony in front of the jury. Those statements as related by the sheriff did not constitute any admis-

sion of Thomas, nor were they in any sense a confession. The statements gave Thomas' version of his evening's activities on the night in question. He did not indicate any participation in, nor knowledge of, the activities resulting in the charge of homicide, nor indeed in any of the other alleged activities of that evening. We are furnished with no explanation as to why the prosecution sought to, and did, introduce the evidence of Thomas' statements for they were in no way incriminating toward him. In effect they put before the jury Thomas' version of the evening and thus his defense to the charge of homicide without the necessity of his taking the stand. Thomas, himself, did not take the stand in his defense. As will be pointed out, infra, we hold that no error was committed by the introduction of the evidence of his statements but nevertheless even if the admission were deemed to be erroneous, such certainly could have constituted no more than harmless error since the benefits, if any, from the introduction of the statements obviously flowed to Thomas rather than the prosecution.

■ As aforesaid, a hearing was held out of the presence of the jury on the admissibility of the evidence pertaining to Thomas' statements. The court therein ruled that the burden was upon the prosecution to establish compliance with the *Miranda* rules and that the waiver allegedly signed by Thomas prior to any interrogation was voluntarily made. The sheriff of Canyon County was interrogated and cross-examined regarding the events prior to the actual interrogation. No testimony in any way controverting the sheriff's testimony was introduced in that out-of-the-jury hearing. At the conclusion of that hearing, the court found that the defendant was fully advised of his rights, that the signing of the waiver [1] was voluntary, that

1. " 'Waiver'
"Sheriff Dale G. Haile has read to me the above statement concerning my rights, and I have read it myself. I understand this statement. I am willing to answer questions and make a statement. I do not want a lawyer. I understand and know

what I am doing. No promises or threats have been made to me and I have not been abused or pressured in any manner in order to get me to make this statement.
"Signed: Lawrence C. Thomas.
"Witness: Joseph Yraguen."

there was no evidence of any threats, promises or abuse in any way, and, although Thomas had the odor of beer upon his breath, he was not intoxicated. The court concluded that the statements made to the sheriff were completely voluntary and given after full advice to Thomas of his constitutional rights. Thereafter, as aforesaid, the testimony of the sheriff was presented to the jury. We hold therefore that the trial court correctly and out of the presence of the jury heard the evidence touching the admissibility of the statements of Thomas and on the basis of that uncontroverted evidence correctly ruled that said evidence was admissible. State v. Ross, supra; Miranda v. Arizona, supra.

We turn next to the statements made by Drapeau. The prosecution sought to introduce evidence of the oral statements made by Drapeau, following his apprehension and while he was in custody. A hearing thereon was also held out of the presence of the jury. The sheriff of Canyon County testified that he had advised Drapeau of his constitutional rights and that although Drapeau had not signed a waiver as had Thomas, Drapeau had nevertheless agreed to discuss the events of the evening in question. The sheriff testified that Drapeau was under no form of coercion, that he was sober and able to read and understand the English language. He testified that Drapeau did not want a lawyer or to talk to a lawyer at that time but was willing to discuss the events of the preceding evening. The sheriff then recited the statements made by Drapeau. At that point Drapeau was placed upon the stand and testified, both as to having been advised of his rights and the voluntariness of his statements and also the correctness of his statements as related by the sheriff. He was examined by his own counsel, by counsel for Thomas and counsel for the prosecution. It is sufficient to say that he denied almost everything to which the sheriff had testified. At the conclusion of such out-of-the-jury-presence hearing the court concluded and ruled that Drapeau had been afforded all of the rights guaran-

teed to him and that his statements were freely and voluntarily made. The court did not at that time rule on the admissibility of the statements but specifically instructed counsel for Drapeau and Thomas that any objection to the admissibility of the statements should be made when the statements were proffered in front of the jury. The jury was returned, the sheriff was again placed upon the stand and examined as to the in-custody interrogation of Drapeau. At no time during the testimony of the sheriff as to that in-custody interrogation was any objection raised by counsel for defendants. We hold that no error was committed by the trial court in the admission of the statements by Drapeau insofar as compliance with *Miranda* standards and requirements is concerned.

We turn now to the last assignment of error which merits discussion. Defendant Thomas contends that evidence of the in-custody statement of Drapeau was improperly and erroneously admitted and was prejudicial against him, Thomas. Thomas particularly relies upon Bruton v. United States, 391 U.S. 123 et seq., 88 S. Ct. 1620, 20 L.Ed.2d 476. It is contended that the testimony regarding the statements of Drapeau was inadmissible hearsay as against Thomas and further that the admission of such testimony constituted a violation of Thomas' rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution.

As above noted, any error in the admission of such testimony may have been waived because of the failure of the defendants to object when the testimony was tendered before the jury. The case at bar may not fall within the rubric of *Bruton*, since, Thomas was afforded and availed himself of the opportunity to cross examine Drapeau as to the in-custody statements. It is true that the cross-examination of Drapeau was largely confined to the voluntariness of the statements and compliance with *Miranda* standards; but nevertheless, cross examination of Drapeau was afforded to Thomas.

We believe, however, that Dutton v. Evans, supra, requires examination of the case at bar and its relation to *Bruton*.

In *Dutton* "three police officers were brutally murdered" in Georgia. Evans was tried separately, found guilty, and sentenced to death. An appeal was taken and the U.S. Supreme Court denied certiorari, Evans v. Georgia, 385 U.S. 953, 87 S.Ct. 336, 17 L.Ed.2d 231 (1969). Thereafter habeas corpus was sought alleging denial of the constitutional right on confrontation because of the admission of testimony concerning a statement of Williams, one of the three accused of the crime. The court in Dutton v. Evans, supra, distinguished between the requirements of the Confrontation Clause of the Constitution and the hearsay rule. The court therein stated:

> "It is not argued, nor could it be, that the constitutional right to confrontation requires that no hearsay evidence can ever be introduced."

The court then went on to point out the examples of the admissibility of dying declarations of the testimony of a deceased witness who has testified at a former trial.

> "The argument seems to be, rather, that in any given case the Constitution requires a reappraisal of every exception to the hearsay rule, no matter how long established, in order to determine whether, in the words of the Court of Appeals, it is supported by 'salient and cogent reasons.' The logic of that position would seem to require a constitutional reassessment of every established hearsay exception, federal or state, but in the present case it is argued only that the hearsay exception applied by Georgia is constitutionally invalid because it does not identically conform to the hearsay exception applicable to conspiracy trials in the federal courts. * * *

> "That the two evidentiary rules are not identical must be readily conceded. It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise. [citations omitted] The hearsay exception that Georgia applied in the present case, on the other hand, permits the introduction of evidence of such an out-of-court statement even though made during the concealment phase of the conspiracy.

> "But it does not follow that because the federal courts have declined to extend the hearsay exception to include out-of-court statements made during the concealment phase of a conspiracy, such an extension automatically violates the Confrontation Clause."

We are required to determine which rule shall be applied in the case at bar: the federal rule which would prohibit the introduction of evidence of such out-of-court statements; or the rule, such as Georgia's, which would admit such evidence and which admission is not constitutionally forbidden. Substituting the names of the principals in the case at bar into the language of Dutton v. Evans, we find:

> "[Drapeau's] personal knowledge of the identity and role of the other participants in the * * * murder is abundantly established * * *. It is inconceivable that cross-examination could have shown that [Drapeau] was not in a position to know whether or not [Thomas] was involved in the murder. Third, the possibility that [Drapeau's] statement was founded on faulty recollection is remote in the extreme. Fourth, the circumstances under which [Drapeau] made the statement were such as to give reason to suppose that [Drapeau] did not misrepresent [Thomas'] involvement in the crime. These circumstances go beyond a showing that [Drapeau] had no apparent reason to lie to [Haile]. His statement was spontaneous, and it was against his penal interest to make it.

These are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant."

All of which reasoning recommends itself to us. It is an abuse of logic and common sense to articulate rules which admit statements of a co-conspirator who has died, has been granted immunity or has testified at a former trial, but deny the admission of such statements at a trial where the declarant is a co-defendant. Such a declaration is no more apt to be the truth at one time than another. As Justice Harlan stated in his concurring opinion in *Dutton*:

"Accomplishment of the main object of a conspiracy will seldom terminate the community of interest of the conspirators. Declarations against that interest evince some likelihood of trustworthiness. * * * As a practical matter, unless the out-of-court declaration can be proved by hearsay evidence, the facts it reveals are likely to remain hidden from the jury by the declarant's invocation of the privilege against self-incrimination."

The U.S. Supreme Court has, we believe, authorized the state courts to differ from the federal rule as above pointed out. We do so differ.

In considering the asserted violation of the confrontation clause the court in *Dutton* stated:

"The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' California v. Green, 399 U.S. [149], at 161, 90 S.Ct. [1930, 26 L.Ed.2d 489], at 1936."

We again adopt the technique of placing the parties in the case at bar in the context of the language of the court in *Dutton*:

"[Thomas] exercised, and exercised effectively, his right to confrontation on the factual question whether [Haile] had actually heard [Drapeau] make the statement [Haile] related. And the possibility that cross-examination of [Drapeau] could conceivably have shown the jury that the statement, though made, might have been unreliable was wholly unreal."

We believe that the relationship between the hearsay rule and the confrontation clause is still muddied and full of conflict. We see no valid distinction between *Dutton* and the case at bar although it may be argued that the evidence herein as contrasted with that in *Dutton* was "crucial or devastating." Cases cited by defendant Thomas such as Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), and Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), have been adequately discussed and distinguished in *Dutton* and such discussion needs no further elaboration herein.

The majority opinion in *Dutton* cited the language of Mr. Justice Cardozo in Snyder v. Mass., 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934) and stated "The closing words of that opinion are worth repeating here." We also deem Cardozo's language worth repeating herein:

"There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free." 291 U.S. 97, 122, 54 S.Ct. 330, 338.

We have examined the remaining assignments of error and find them to be without merit. The judgment is affirmed.

McQUADE, C. J., and McFADDEN, DONALDSON and SPEAR, JJ., concur.