Larry J. DRAPEAU, Petitioner,

v.

Raymond W. MAY, Warden, Respondent.

Lawrence C. THOMAS, Petitioner,

v.

Raymond W. MAY, Warden, Respondent.

Civ. Nos. 1-72-62, 1-72-73.

United States District Court,
D. Idaho.

Oct. 11, 1972.

Robert L. Smith, of Smith, McDonald & Ahrens, Nampa, Idaho, for Larry J. Drapeau.

Leon R. Weeks, of Weeks & Yost Nampa, Idaho, for Lawrence C. Thomas.

W. Anthony Park, Atty. Gen., and J. D. Williams, Asst. Atty. Gen., for defendant Raymond W. May, Warden.

## MEMORANDUM DECISION and ORDER

J. BLAINE ANDERSON, District Judge.

These consolidated cases are before the Court on petitions for a writ of habeas corpus (28 U.S.C. § 2254), each of which raise essentially the same issues. Petitioners are state prisoners incarcerated in the Idaho State Penitentiary following a joint trial by jury and were found guilty of murder in the second degree on April 2, 1970. A sentence of life imprisonment was pronounced as to each petitioner. The convictions arose out of a charge of murder in the first degree for the slaying of a Parma, Idaho, police officer during the early morning hours of September 22, 1969.

Respondent May has filed a return to each petition primarily urging that petitioners have failed to exhaust their state remedies. This contention is supported by affidavits of the Clerk of the State District Court where the trial was held and of the Clerk of the Supreme Court of this State. Counsel have been appointed for each petitioner and a traverse has been filed on their behalf. No issue has been taken with the assertions in the affidavits attached to respondent's returns.

A conference was held in open court with all counsel on July 12, 1972, at which time additional time was granted to petitioners to prepare, file and serve their respective traverses and legal authorities; counsel were instructed to raise every issue which could properly be raised in these proceedings whether the same as, or in addition to, those presented heretofore in the State Courts; and that this Court was to be, and it has been, furnished the complete record made in the State District and Supreme Courts. This Court has thoroughly read and digested the reporter's and clerk's transcripts and the appellate briefs of all parties. This Court has also studied the Supreme Court of Idaho decision on the appeals of each of the petitioners. State v. Drapeau and Thomas, 94 Idaho 430, 489 P.2d 1310.

It appears from the records in this Court and of the State Courts that petitioners filed motions for new trials which were denied by the State trial judge after hearing. As stated, an appeal was taken to the State Supreme Court and the convictions were affirmed. The petitions and the traverses raise only the issues heretofore presented to the State District and Supreme Courts and decided adversely to petitioners at each level. No depositions have been taken or affidavits submitted by petitioners although attention was called to this method of proof at the conference on July 12, 1972. No suggestion has been made that any new or additional evidence can or should be produced.

Respondents contend, and petitioners in effect admit, that they have not technically exhausted their state remedies by habeas corpus, Rule 49, Idaho Supreme Court Rules; Secs. 1–203 and 1–705,

Idaho Code, nor for post conviction relief, under Idaho's Uniform Act, Title 19, Ch. 49, Idaho Code.

The issue then becomes whether, on this status of the matter, this Court will accept jurisdiction and inquire into the issues thus presented, or dismiss the petitions for failure to exhaust petitioners' state remedies. Defendants have agreed that no new factual issues can be presented and have waived an evidentiary hearing. It has been submitted on the total record made in the State Courts and in this Court.

█ The Court has concluded to accept jurisdiction not because the State Court processes are "ineffective to protect the rights of the prisoner", Title 28, Sec. 2254(b) U.S.C.A., but for the reason that there has been a practical exhaustion of State remedies and any different result seems unlikely in the State Courts. Though urged upon petitioners' counsel, no issues or new cases are presented to this Court that were not presented to the State Courts. No practical good can come from sending this matter back to the State Courts only to have it return here (perhaps) at a later date and then commence the spiral through the federal judicial staircase. That process, if it must, may just as well commence now. This result is fortified by the fact that these petitions constitute a collateral attack against the same issues decided by the Idaho Supreme Court adversely to petitioners. That Court has recently held that it will, or need not, review, in post-conviction relief proceedings, issues already presented to it and decided adversely to the petitioner. In effect, holding that the doctrine of res adjudicata applies. Larsen v. May, 93 Idaho 602, 468 P.2d 866; Clark v. State, 92 Idaho 827, 452 P.2d 54; cf. Lucas v. People of State of Michigan, 420 F.2d 259 (6th Cir. 1970).

## I.

### CHANGE OF VENUE

█ This issue is raised by both petitioners. Petitioners have failed to sustain their burden of proof that the pretrial publicity was so pervasive in the community that they could not, and did not, have a fair trial. Without reservation, this Court agrees with the analysis of the Supreme Court of Idaho, 94 Idaho 430, 489 P.2d 1310, 1313, and the comments of the state trial judge in denying the motion for change of venue. (Rep. Tr., Vol. I, pp. 25–30). This tragedy occurred September 22, 1969. It came to trial March 30, 1970, and the jury, including one alternate, was selected in one day. The lapse of time would certainly tend to diminish any adverse effect of any prejudicial publicity. There is no showing or contention of undue or continued publicity of an unfavorable nature during the period between the homicide and trial.

That persons accused of crimes can receive fair and impartial jury trials in this country, even in the face of extensive local and nationwide publicity involving innuendos of guilt, are the very recent trials of Angela Davis, resulting in acquittal, and the Alioto civil and criminal trials in the state and federal courts in Washington State.

## II.

### ADMISSION OF INFERENTIALLY INCRIMINATING EXCLAMATION OF DECEASED CODEFENDANT

█ Both petitioners raise this question. It was decided correctly and adversely to petitioners by the Idaho Supreme Court, 94 Idaho 430, 489 P.2d 1310, pp. 1315–1316. As pointed out in that decision, it was admissible under several exceptions to the hearsay rule. All of the circumstances clearly cast the statement in an aura of reliability. Defendants did not object when the statement was reiterated before the jury. (Vol. I, Rep.Tr. p. 101) United States v. King, et al., (9th Cir. No. 71–1256, Aug. 24, 1972). It was not directly incriminatory of these defendants. The trial court excised and the jury did not hear any reference to Drapeau or Thomas.

It heard only that Williams said: "We shot the hell out of him and his partner too." (Vol. I, Rept.Tr. pp. 99–100). When the entire transcript is read it was not "devastating" or "crucial" since the chain of direct and circumstantial evidence woven without the statement points unerringly to the guilt of the defendants. Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213.

The trial court's instructions were fair and favorable to the defendants. They included two instructions upon the "two reasonable hypotheses" theory of guilt or innocence (Rep.Tr., Vol. I, pp. 339–340) and cautionary instructions relating to verbal admissions and confessions and the determination of the issue of voluntariness, Vol. I, Instr. # 31, 32 and 33, pp. 365–367.

■■ After close and careful review of the entire record in these cases, this Court is convinced beyond a reasonable doubt that if error was committed, it was harmless. United States v. Steed, et al., 465 F.2d 1310 (CA 9th 1972). A violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), assuming one occurred, does not require an automatic reversal. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The case was "significantly persuasive" without the completely spontaneous voluntary statement of the deceased, Williams. Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

### III.

### ADMISSIBILITY OF STATEMENTS BY THOMAS

■ No rights of Thomas or Drapeau were violated by the admission of Thomas' in-custody statement. It was freely and voluntarily made after full advice as to his rights; he signed a "Miranda" statement. The content of his in-custody statement was exculpatory rather than inculpatory. It was not a confession and, as stated by the Idaho Supreme Court, 94 Idaho 430, 489 P.2d p. 1316, it put defendant's version "before the jury * * * without the necessity of [Thomas] taking the stand."

### IV.

### ADMISSIBILITY OF STATEMENTS BY DRAPEAU

■ Drapeau's in-custody statement presents a more thorny problem. The issue of voluntariness was first presented to the Court. After the Sheriff testified as to warnings and matters convincing as to voluntariness, Drapeau took the stand and was examined and cross-examined, both by the prosecution and Thomas' attorney. When Drapeau took the stand, he denied all statements attributed to him by Haile. When the same matter was heard before the jury, counsel for defendants made absolutely no objection, even though they were invited to do so by the trial judge at the non-jury hearing. In the absence of plain error, and there is none, this issue cannot now be raised. United States v. King, supra. As heretofore pointed out, the issue of voluntariness was submitted to the jury by appropriate instruction. The jury was instructed to view any statement or admission with caution. (Instr. #31)

Other circumstances, not denied by Drapeau at the non-jury hearing, show that his statement to Haile was voluntary. Drapeau did in fact receive the appropriate Miranda warning; he made statements that he wouldn't sign Miranda warning but would talk anyway (p. 176); that he would talk but didn't want anything recorded (p. 77); that he was offered an attorney and a list of attorneys to call (p. 155); that Drapeau did in fact make a number of telephone calls before interrogation (p. 185, p. 217); he did not interrupt the interrogation (p. 178); he had not been drinking and understood (p. 178); he did not go back to the cell though said he "was threatened" with this (p. 184); later he stated (p. 185) he was not "threatened" and that he understood the remark to

"send him back to his cell" as only a "smart aleck" remark (pp. 187–189).

"An express waiver is not required." United States v. Moreno-Lopez, 466 F.2d 1205 (CA 9th, 1972). United States v. Hilliker, 436 F.2d 101, 102 (9th Cir. 1970) cert. den. 401 U.S. 958, 91 S.Ct. 987, 28 L.Ed.2d 242 (1971).

Thomas also complains about Drapeau's statement as applied to him. The Supreme Court of Idaho gives an extensive and lucid discussion of this problem area. 94 Idaho 430, 489 P.2d 1317–1319. The decision concludes that no constitutional rights of Thomas were violated. This court agrees and can do no better than to refer to and adopt it.

Counsel for all parties are to be commended for their excellent briefs and assistance to the Court.

In view of the conclusions reached, it is ordered that said petitions be, and each one of them is hereby, dismissed and the writs are denied.