# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49248

| | |
|---|---|
| BRIAN CHIKEZIE EBOKOSKIA, | ) |
| | ) Filed: April 11, 2023 |
| Petitioner-Appellant, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| STATE OF IDAHO, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. James S. Cawthon, District Judge.

Judgment dismissing petition for post-conviction relief, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

LORELLO, Chief Judge

Brian Chikezie Ebokoskia appeals from the judgment dismissing his petition for post-conviction relief. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

A jury found Ebokoskia guilty of trafficking marijuana after officers discovered approximately twenty-five pounds of marijuana in the trunk of the vehicle in which he was a passenger. Ebokoskia appealed, asserting that the State failed to present sufficient evidence to establish his knowledge and control of the marijuana in the vehicle. This Court affirmed his judgment of conviction in an unpublished opinion. *See State v. Ebokoskia*, Docket No. 46176 (Ct. App. Aug. 1, 2019).

1

Subsequently, Ebokoskia filed a petition for post-conviction relief. With the aid of appointed counsel, Ebokoskia filed an amended petition alleging that his trial counsel was ineffective for stipulating to admission of a dashcam video from an officer's patrol vehicle. In the video (which was recorded while the driver was alone in the backseat of the patrol vehicle during the traffic stop), the driver of the vehicle in which Ebokoskia was a passenger can be heard saying, multiple times, "I'm f[*****]," disclaiming knowledge of the marijuana, and concluding with saying, "We're f[*****]." Ebokoskia alleged that admission of the statement violated his confrontation rights because he did not have an opportunity to cross-examine the driver. The district court dismissed Ebokoskia's petition after an evidentiary hearing, concluding that his trial counsel was deficient for failing to raise a confrontation objection but that Ebokoskia failed to show that the lack of an objection was prejudicial. Ebokoskia appeals.

## II.

## STANDARD OF REVIEW

When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the district court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Baxter*, 149 Idaho at 862, 243 P.3d at 678.

## III.

## ANALYSIS

Ebokoskia argues the district court erred by dismissing his petition for post-conviction relief because he established a reasonable probability that the result of his trial would have been different had his trial counsel objected to the dashcam video on confrontation grounds. The State responds that the district court incorrectly concluded that Ebokoskia's trial counsel was deficient but correctly determined that Ebokoskia did not meet his burden of establishing he was prejudiced by his trial counsel's failure to make a confrontation objection. We hold that Ebokoskia has failed

to show error in the denial of relief on his claim that trial counsel was ineffective for stipulating to admission of the dashcam video (which video was central to Ebokoskia's defense) because the driver's statement on the dashcam video was nontestimonial and, therefore, not objectionable based on Ebokoskia's confrontation rights. Moreover, as the district court concluded, Ebokoskia was not prejudiced by admission of the video.

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

The decision to object to evidence falls within the area of tactical or strategic decisions. *See Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994); *Cook v. State*, 157 Idaho 775, 778, 339 P.3d 1179, 1182 (Ct. App. 2014). Effective legal representation does not require an attorney to object to admissible evidence. *Cook*, 157 Idaho at 778, 339 P.3d at 1182. Indeed, if the evidence is arguably admissible and the trial court could properly admit the evidence over an objection, the lack of such an objection will generally not constitute deficient performance. *Id.*; *see also State v. Higgins*, 122 Idaho 590, 602-03, 836 P.2d 536, 548-49 (1992) (noting that many of trial counsel's alleged errors in failing to object involved evidence that was arguably admissible and that the decision not to object may have reflected a conscious trial strategy to avoid frequent overruling by the judge and annoyance of the jury). Further, where the alleged deficiency is trial counsel's failure

3

to make an objection, a conclusion that the objection, if pursued, would not have been sustained by the trial court is generally determinative of both prongs of the *Strickland* test. *See Lint v. State*, 145 Idaho 472, 477, 180 P.3d 511, 516 (Ct. App. 2008) (noting that failure to file a motion that would not be granted is generally dispositive of both the deficient performance and prejudice requirements of an ineffective assistance of counsel claim). Accordingly, if the driver's statements on the dashcam video would have been admitted despite an objection on confrontation grounds, then Ebokoskia's trial counsel was not deficient for failing to make that objection and Ebokoskia was not prejudiced as a result.

The district court held that trial counsel's failure to request redaction of the driver's statement, "We're f[*****]," from the dashcam video "amounted to a constitutional violation" and was deficient performance. The district court found that the driver indicated he would exercise his Fifth Amendment right to remain silent if called to testify and, consequently, Ebokoskia's trial counsel did not call the driver as a witness during Ebokoskia's trial. According to the district court, "the introduction of [the driver's statement] posed a substantial threat to [Ebokoskia's] right to confront witnesses against him, a hazard the United States Supreme Court says we cannot ignore." In support of this conclusion, the district court referenced *Bruton v. United States*, 391 U.S. 123 (1968), which held that admission of a confession by a nontestifying co-defendant (that also implicated a defendant), violated that defendant's right to confrontation and could not be cured by a jury instruction. As the district court recognized, however, although the driver was also charged with trafficking in marijuana based on the same set of events, the driver and Ebokoskia did not have a "joint trial." Because Ebokoskia was not tried with the driver, *Bruton* is not controlling. *See State v. Thomas*, 94 Idaho 430, 435-36, 489 P.2d 1310, 1315-16 (1971) (noting that "co-actor" was not a co-defendant and, as such, *Bruton* did not apply). Ebokoskia asserts that this Court need not determine "*Bruton*'s applicability to co-defendants tried separately" because the driver's "statement was testimonial and[,] thus[,] prohibited by the Confrontation Clause." We agree that further addressing *Bruton* is unnecessary because this case does not involve a joint trial. However, we disagree that the driver's statement would have been suppressed as testimonial.

If a statement is testimonial and the declarant does not testify at trial, admission of the statement at trial violates a defendant's right under the Confrontation Clause of the Sixth Amendment unless the declarant is unavailable and the defendant had a prior opportunity to cross-

4

examine the declarant regarding the statement. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Thus, the predicate question, regardless of the declarant's availability and prior opportunity to cross-examine, is whether the statement sought to be admitted is testimonial. *Id.* Determining whether a statement is testimonial requires application of the "primary purpose test." *Ohio v. Clark*, 576 U.S. 237, 246 (2015). A statement is testimonial when, "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Id.* at 245 (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). Resolving this question requires consideration of the purpose held by both the declarant and other participants to the conversation, as determined from an objective standpoint. *Bryant*, 562 U.S. at 360, 374-76. Factors to consider include whether there is an ongoing emergency at the time of the statements and the level of formality of the interview. *Clark*, 576 U.S. at 245. In addition, the "standard rules of hearsay, designed to identify some statements as reliable, [are] relevant" to determining the primary purpose of statements. *Bryant*, 562 U.S. at 358-59. As the proponent of the evidence, the State bears the burden of showing that the statement is not testimonial. *United States v. Jackson*, 636 F.3d 687, 695 (5th Cir. 2011).

We first address the driver's purpose. The district court found that, after the driver was "arrested and placed in the back seat of the police cruiser, he was noticeably shaken and proclaimed: 'We're f[*****].'"[1] The driver was alone in the vehicle at the time and, prior to making this statement, he uttered a string of profanities, including saying, "I'm f[******]" several times. The dashcam video shows that the driver said, "We're f[*****]," as an officer approached the police vehicle to open the door. In short, the driver's statement was akin to an excited utterance under I.R.E. 803(2), an exception to the rule against hearsay. Under *Bryant*, the resemblance to an excited utterance, while not necessarily determinative, is helpful to our analysis because it indicates that the driver's statement was spontaneous and not the result of reflective thought. *See State v. Fox*, 170 Idaho 846, 865, 517 P.3d 107, 126 (2022). It was also not the product of police questioning, nor does the dashcam video reveal that the driver was informed that the police vehicle

---

[1] The district court found that the driver said, "We're f[*****]," both "at the beginning and end" of the approximately two-minute video clip from the dashcam video. Our review of the dashcam video, however, reveals that, although the driver repeatedly said, "I'm f[*****]," he said "We're f[*****]" only once during that approximately two-minute clip.

was equipped with a recording device. Because the driver was alone, made the statement spontaneously while under stress and was not informed that there was recording equipment, we conclude that the driver lacked a testimonial purpose when he made the statement. Stated differently, there is no basis from which to conclude that the driver made the statement with the intent of creating an out-of-court testimonial substitute for trial testimony. *See Clark*, 576 U.S. at 245.

Ebokoskia asserts that "one reason police cruisers are equipped with recording devices to record a suspect sitting in the car is to memorialize any statements made by those suspects which are preserved for later use in criminal prosecutions." Without providing a supporting citation to the record, Ebokoskia further asserts that "any remarks or statements [the driver] made aloud he knew (or should have known) would have been recorded." As noted, the dashcam video does not reveal that the driver was informed or was otherwise aware that the police vehicle had an audio recording device. Nor does Ebokoskia support the argument that the driver "should have known" that his statement would be recorded with anything more than a conclusory assertion. And, as previously noted, the driver's statement was not the product of an interrogation. To the contrary, no officer was present in the vehicle when the statement occurred. Nor was the statement the product of a conversation involving other participants (including Ebokoskia) whose purposes might play a role in determining whether the statement was testimonial. Generally, statements surreptitiously recorded without the declarant's knowledge are not testimonial. *See United States v. Saget*, 377 F.3d 223, 228-29 (2d Cir. 2004) (holding that statements made by a co-conspirator to a confidential informant that were recorded without the co-conspirator's knowledge were not testimonial), *supplemented*, 108 F. App'x 667 (2d Cir. 2004).

We recognize that officers utilize recording equipment to further criminal investigations, revealing a general forensic purpose. But, to the extent the purpose of a nonparticipant to a nonconversation plays a role in the totality of the circumstances, we hold that this factor is not sufficient to make the driver's statement testimonial when the driver lacked a testimonial purpose. *Cf. State v. Ta'afulisia*, 508 P.3d 1059, 1066, 1070 (Wash. Ct. App. 2022) (noting that the participants "had vastly disparate--and conflicting--purposes during the interaction" but holding that an "informant's secret purpose in gathering or recording evidence for possible use at a later trial" did not render the other declarants' statements testimonial). Accordingly, we hold that the

6

driver's statement "We're f[*****]" while in the back of the patrol vehicle was not testimonial. Thus, an objection to the driver's statement based on Ebokoskia's Sixth Amendment right to confrontation would be meritless. Consequently, Ebokoskia's trial counsel was not deficient by failing to raise the confrontation objection, and Ebokoskia was not prejudiced by his trial counsel's inaction.

Moreover, the district court correctly concluded there was no prejudice from the nonsuppression of the portion of the video in which the driver could be heard saying, "We're f[*****]" because there is no reasonable probability of a different outcome based on admission of that portion of the video. The evidence that Ebokoskia's knowledge of the presence of trafficking amounts of marijuana in the vehicle was overwhelming. The evidence ranged from Ebokoskia's admission to smoking marijuana, to the suspicious explanations regarding the travel plans of Ebokoskia and the driver, to the presence of odor masking efforts inside the car (including several air fresheners and three old boxes of chicken covered in gravy--two of which were at Ebokoskia's feet). On appeal, Ebokoskia makes much of the prosecutor's proclaimed reliance on the plural reference to who was "f[*****]" during closing argument. What Ebokoskia does not acknowledge is that the prosecutor's comments in this regard were in rebuttal closing after trial counsel emphasized during his closing argument that Ebokoskia's proclaimed lack of knowledge was consistent with the driver's repeated statement that *he* was "f[*****]." As to the one reference to "we," trial counsel argued the statement was ambiguous, particularly since Ebokoskia was not present in the patrol vehicle when the driver said it. Indeed, the statement could have referred to the person to whom the marijuana was being delivered to in Missouri. Or, the driver could have believed Ebokoskia could also be "f[*****]" regardless of any defense that he lacked knowledge by virtue of his presence in a vehicle loaded with marijuana. In any event, we agree with the district court that there is no reasonable probability of a different outcome at trial based on the driver's one-time use of "we" in the context of all the evidence presented at trial.

## IV.

## CONCLUSION

The driver's statement on the dashcam video was not subject to a confrontation objection because it was not testimonial, nor did its admission prejudice Ebokoskia. Consequently, Ebokoskia has failed to show the district court erred by dismissing his petition for post-conviction

relief.  Accordingly, the judgment dismissing Ebokoskia's petition for post-conviction relief is affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.