IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38769

SARAH M. JOHNSON,                    )
                                     )
    Petitioner-Appellant,            )        **Boise, December 2013 Term**
                                     )
v.                                   )        **2014 Opinion No. 21**
                                     )
STATE OF IDAHO,                      )        **Filed: February 18, 2014**
                                     )
    Respondent.                      )        **Stephen W. Kenyon, Clerk**
                                     )
_____ ) .

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Blaine County. Hon. G. Richard Bevan, District Judge.

District court order dismissing petition for post-conviction relief and denying motion for new trial for first degree murder conviction, <u>affirmed.</u>

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis Benjamin argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Jessica Lorello, Deputy Attorney General argued.

_____

BURDICK, Chief Justice

Sarah Johnson appealed from the district court's order dismissing her petition for post-conviction relief following convictions on two counts of first degree murder. We affirm the district court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2003, Alan and Diane Johnson (the Johnsons) were shot and killed in their home. The Johnsons' sixteen-year-old daughter, Sarah Johnson (Johnson), was home at the time of the shooting. She consistently denied any involvement, but gave several different accounts of what she was doing, what she saw, and what she heard prior to and after the murders. Johnson variously stated that she was awoken by the first shot and fled immediately after, that she was awake and could hear arguing before any shots were fired, and that after hearing the first shot, she went to her parents' bedroom before fleeing at the sound of the second shot. After fleeing the house, she knocked on several neighbors' doors until one answered and the police

1

were called. Johnson was ultimately charged with both murders and was represented by Robert Pangburn and Mark Rader.

Police found a leather glove from a pair usually kept in Diane Johnson's SUV, Johnson's keys including a key to the guesthouse, the magazine of a nine-millimeter handgun wrapped in a bandana, and two .264 caliber magnum shells in Johnson's bedroom. In a garbage can outside of the residence the police also found a latex glove, a leather glove matching the one found in Johnson's bedroom but for the opposite hand, and a pink robe covered in blood that belonged to Johnson and had .25 automatic pistol ammunition in the pocket. Testing revealed that Johnson's DNA was present inside of the latex glove and that paint chips found inside of the robe matched paint on the shirt Johnson was wearing the morning of the murders.

The murder weapon, a .264 rifle, belonged to Mel Speegle, who was renting the Johnsons' guesthouse, but was out of town at the time of the murders. Fingerprints located on the stock of the rifle, the scope from the rifle, and two boxes of .264 shells did not match Speegle's and were unidentified at the time of trial. There were no prints on the rifle, scope, or ammunition that matched Johnson's. Speegle testified at trial that he kept the rifle in his closet, which was unlocked, and that he was not aware how many people had touched the rifle, but that his wife and friend had helped him move into the guesthouse in 2002. Speegle also testified at trial that Johnson had access to the guesthouse, knew he would be gone the weekend before the murders, and knew that the rifle along with his other guns and ammunition were located in the closet. Johnson had a key to the guesthouse and had been in there several times including the days immediately preceding the murders.

After a lengthy trial, a jury found Johnson guilty of first-degree murder of both Alan and Diane Johnson. The district court sentenced Johnson to concurrent life sentences, plus fifteen years under I.C. § 19-2520 for a firearm enhancement.

Johnson's first appeal of her conviction was dismissed because her attorneys failed to file a timely notice of appeal. Thereafter, Johnson filed a petition for post-conviction relief raising claims of ineffective assistance of counsel and denial of due process. The district court found ineffective assistance of counsel in the failure to file a timely notice of appeal and re-entered the judgment of conviction allowing time for the direct appeal to begin anew. Johnson immediately filed a timely notice of appeal, and the district court stayed proceedings on the remaining post-conviction claims. Johnson then filed a Second Amended Petition for Post-Conviction Relief,

which raised numerous claims, including allegations that (1) her trial counsel was ineffective for failing to elicit testimony from Robert Kerchusky, the defense's fingerprint expert; (2) the unidentified prints on the murder weapon, its scope, and an insert from the box of ammunition were fresh; and (3) newly discovered evidence warranted a new trial. The newly discovered evidence claim was based on the discovery that Christopher Hill's fingerprints matched the previously unidentified prints on the murder weapon, its scope, and the ammunition.

Hill was Speegle's friend and the former caretaker of Speegle's ranch. Speegle and Hill both testified at the post-conviction evidentiary hearing. Hill testified that he had helped Speegle move from his ranch into the guesthouse in 2002. In explaining why his prints would be on Speegle's rifle, other than having possibly left them when he helped Speegle move, Hill testified that he "took [the rifle] out, tried to sight it," and shot it "six or seven times" using Speegle's ammunition in the spring of 2000 when he was caretaking at Speegle's ranch.

The State filed a motion for summary dismissal, which was granted in part, and denied in part. The court held an evidentiary hearing on six claims including Johnson's claims regarding counsel's alleged failure to inquire about the age or "freshness" of the unidentified prints and the newly discovered evidence claim. After the evidentiary hearing and submission of post-trial briefing, the district court denied relief on the remainder of Johnson's claims. Johnson filed a timely notice of appeal.

## II. ANALYSIS

Johnson contends that the district erred in denying her post-conviction claims for both ineffective assistance of counsel and newly discovered evidence. A petition for post-conviction relief is a civil proceeding. *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008). As the petitioner, Johnson has the burden of proving by a preponderance of the evidence that her assertions are correct. *Id*. Where there is competent and substantial evidence to support a decision made after an evidentiary hearing in a post-conviction proceeding, that decision will not be disturbed on appeal. *Estrada v. State*, 143 Idaho 558, 561, 149 P.3d 833, 836 (2006). This Court, however, exercises free review of the district court's application of the law. *Id.*

### A. Johnson received effective assistance of counsel.

Johnson contends that she was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Section 13 of the Idaho Constitution. We analyze both Johnson's state and federal constitutional claims

3

in terms of whether the conduct of Johnson's counsel fell below an "objective standard of reasonableness," as that test is defined in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Shackelford*, 150 Idaho 355, 382, 247 P.3d 582, 609 (2010). To prevail on an ineffective assistance of counsel claim, Johnson has the burden of establishing that her attorney's performance was deficient and that she was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687. In assessing the reasonableness of attorney performance, this Court has cautioned that "judicial scrutiny must be highly deferential and every effort must 'be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *State v. Mathews*, 133 Idaho 300, 306, 986 P.2d 323, 329 (1999) (quoting *Strickland*, 466 U.S. at 689). Furthermore, tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on "inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective review." *Shackelford*, 150 Idaho at 382–83, 247 P.3d at 609–10. Even where the defendant carries her burden of establishing deficient performance, she must also show a reasonable probability that but for counsel's performance, the result of the trial would have been different. *State v. Fields*, 127 Idaho 904, 912, 908 P.2d 1211, 1219 (1995).

On appeal, Johnson argues that the failure of her trial attorney, Robert Pangburn, to elicit testimony from the defense's fingerprint expert, Robert Kerchusky, regarding the freshness of the fingerprints on the rifle, the scope, and the ammunition was not a strategic decision, but rather was due to lack of preparation. She contends that the answers to these unasked questions would have significantly furthered her defense strategy, and therefore, the omission is capable of objective review.

Johnson does not present convincing evidence that Pangburn was ineffective or that she might not have been convicted but for his mistakes. First, she provides no evidence to contradict the district court's factual finding that "Pangburn was prepared regarding the defense fingerprint theory and he exercised his judgment and skill in presenting those issues to the jury." Second, her argument that Pangburn's omission served no tactical or strategic purpose is misplaced. She argues that because further questioning of Kerchusky would have aided her case, the omission of such questioning could not be strategic. While Pangburn did not specifically ask Kerchusky if the fingerprints were "fresh," he did elicit testimony that prints do not last on a non-porous surface, like a gun, for more than a year. Pangburn's choice of words and mode of questioning in

4

examining Kerchusky falls within the area of tactical or strategic decisions. *See Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994). In the absence of evidence that these strategic decisions were the product of inadequate preparation or ignorance of the relevant law, we hold that Pangburn's performance was not deficient.

Moreover, Johnson has failed to show that further questioning of Kerchusky would have produced a different result at trial. Unless prejudice is presumed, the accused bears the weighty burden of demonstrating prejudice to the outcome. *Id.* In this case, Johnson does not argue that prejudice is presumed, and the record supports the district court's conclusion that the information regarding the freshness of the fingerprints was before the jury. Kerchusky testified that prints do not last on a non-porous surface for more than a year. Speegle had previously testified that, to his knowledge, the gun had not been handled since the day he moved in—over a year before the murders. And, Pangburn highlighted to the jury the theory that whoever left the unidentified fingerprints on the gun and ammunition box was the person who committed the murders. Indeed, in his closing argument Pangburn stated, "You know, these things start getting a year old, and you're just not going to see it…. Those fingerprints had not been there very long. They couldn't have been." Thus, Johnson's argument that further details concerning the freshness of the prints would have somehow changed the outcome of trial is without merit and the district court correctly denied her ineffective assistance of counsel claim.

**B. The identification of the fingerprints as Hill's does not entitle Johnson to a new trial.**

The request for a new trial in a post-conviction proceeding based on newly discovered evidence is the same as a motion for new trial subsequent to a jury verdict. *Rodgers v. State*, 129 Idaho 720, 723, 932 P.2d 348, 351 (1997). To succeed on her newly discovered evidence claim Johnson must establish:

> (1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that the failure to learn of the evidence was due to no lack of diligence on the part of the defendant.

*State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976).

Johnson argues that the identification of the fingerprints on the rifle, scope, and ammunition box as Christopher Hill's is newly discovered evidence entitling her to a new trial. The district court agreed with Johnson's contention that the identification of the fingerprints was newly discovered evidence under the standard set out in *Drapeau*. However, the court concluded

5

that she had failed to show that this evidence was material or probably would have resulted in an acquittal as required by that standard. In reaching this conclusion, the district court stated:

> The jury was aware that unidentified fingerprints were on the scope, gun, some of the shells, and the box containing shells. Thus, it was established at trial that Johnson had left no fingerprints on those items; if any of the prints on those items belonged to the "real killer," then the killer was not Johnson and was some unidentified person. Pangburn utilized this fingerprint information and argued it to the jury to no avail. The jury was aware of the phantom prints, and they still convicted Johnson of both counts of first degree murder; thus telling a new jury the name of the owner of those phantom prints will not likely produce an acquittal.

Johnson argues that the evidence is material because it contradicts the State's theory that she fired the rifle without leaving any fingerprints or destroying the unknown fingerprints. However, the identification of the fingerprints as Hill's no more contradicts the State's theory than the evidence of the presence of the unknown fingerprints and the absence of Johnson's fingerprints did at the time of trial.

"Whether a fact is material is determined by its relationship to the legal theories presented by the parties." *Stevens*, 146 Idaho at 143, 191 P.3d at 221. In this case, the defense's theory was that Johnson could not have committed the murders without leaving any fingerprints or having any blood or tissue on her person. As the district court noted, the jury was aware of the unidentified fingerprints on the rifle and the defense's theory that whoever left them committed the murders. For the identification of the prints to be material, the identification would have to be of someone who could have potentially committed the murders. Thus, the only colorable argument that Johnson makes is that the identification of the prints as Hill's is material because he had some connection to the house and potentially knew were the guns were located.

The lack of evidence linking Hill to the murders detracts both from the evidence's materiality and from the probability that the evidence would produce an acquittal. The district court found that Hill "specifically, and credibly, denied any involvement in the murders of Alan and Diane, noting he did not even hear about the murders until about one week after they occurred because he had been camping." Johnson attempts to contradict this conclusion and connect Hill to the murders with the following evidence: (1) Hill helped Speegle move into the guesthouse and so knew where the guns were stored; (2) Hill did not have anyone come forward and verify his claim that he was camping on the Magic Reservoir on the day of the murders; (3) according to Kerchusky, prints would not be left on the rifle from the date Hill claims to last

have fired the rifle and handled the ammunition; and (4) Janet Sylten, a former cleaning lady of the Johnsons who the defense attempted to paint as a suspect, lived at the Magic Reservoir from June 2004 until January 2005.[1]

Even assuming Hill knew where the gun was located in the guesthouse, he would not have had access to the house or had the knowledge of the house's contents necessary to frame Johnson, i.e., knowledge of where she kept her robe or where the gun safe was located to retrieve the nine-millimeter magazine found in Johnson's room. As the district court noted, the "totality of the evidence simply does not support Kerchusky's theory that Hill was the last person to touch the scope, the gun, or the ammunition." Moreover, Kerchusky admitted on cross-examination, as he did at trial, that he has no way of knowing when fingerprints are placed on any given item. Additionally, the fact that no one came forward to verify Hill's alibi does not contradict the district court's finding of fact that Hill testified credibly that he was camping. Finally, Johnson's attempt to connect Hill to Sylten based on the fact that they lived in the same place at two completely different points in time is not supported by any evidence and was not raised below.

Johnson has failed to show that the newly discovered evidence is material or would probably produce an acquittal. As the district court reasoned, the fact that Hill testified as to where and how he touched the rifle "makes the fingerprint testimony even less valuable than it was at the time of the trial, when the defense could argue that a nameless third party handled the gun, the shells and removed the scope." We agree with the district court's conclusion and hold that Johnson has not met the requirements of *Drapeau* for a new trial.

### III. CONCLUSION

We affirm the district court's order denying Johnson post-conviction relief on her ineffective assistance of counsel and newly discovered evidence claims.

Justices EISMANN, J. JONES, HORTON and SCHROEDER, pro tem, **CONCUR.**

---

[1] Sylten helped clean the Johnsons' home on one occasion. Her employer fired her after finding make-up in her possession that Diane Johnson had reported as missing. Sylten testified that she did not have any animosity towards Diane Johnson and had never even met her.