**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41449**

| | |
|---|---|
| SEAN M. COOK, | ) |
| | )    **2014 Opinion No. 70** |
| Petitioner-Respondent, | ) |
| | )    **Filed: September 2, 2014** |
| v. | ) |
| | )    **Stephen W. Kenyon, Clerk** |
| STATE OF IDAHO, | ) |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John R. Stegner, District Judge.

Judgment granting petition for post-conviction relief, <u>vacated</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Daniel G. Cooper, Coeur d'Alene, for respondent.

_____

MELANSON, Judge

The state appeals from the district court's judgment granting Sean M. Cook's petition for post-conviction relief. For the reasons set forth below, we vacate the judgment.

**I.**

**FACTS AND PROCEDURE**

In the underlying criminal case, a jury found Cook guilty of rape, I.C. § 18-6101. The district court sentenced Cook to a unified term of thirty years, with a minimum period of confinement of ten years. The district court granted Cook's subsequent I.C.R. 35 motion, reducing his sentence to a unified term of twenty years, with a minimum period of confinement of ten years. Cook then appealed from the judgment of conviction and this Court affirmed in an unpublished opinion. *See State v. Cook*, Docket No. 36145 (Ct. App. Nov. 22, 2010).[1]

_____

[1]    The facts of the underlying criminal case were set out in that opinion as follows:

1

Cook filed a petition for post-conviction relief, asserting several claims of ineffective assistance of counsel and prosecutorial misconduct. The district court summarily dismissed several of the claims, but held an evidentiary hearing on two of Cook's ineffective assistance of counsel claims. Specifically, Cook alleged that his trial counsel was ineffective for failing to object to the admission of testimony that Cook had threatened a witness's family and testimony regarding the victim's out-of-court statements. An experienced defense attorney testified as an expert witness for Cook, asserting that Cook's trial counsel had provided ineffective assistance that affected the outcome of the trial. Cook's trial counsel testified for the state, offering his trial strategy in declining to object to admission of the disputed testimony. Following the hearing, the district court determined that Cook's trial counsel was ineffective for failing to object to both instances of disputed testimony because both were likely inadmissible and there was a reasonable probability that the outcome of the trial would have been different had the testimony been excluded. As a result, the district court granted Cook's petition for post-conviction relief, vacated Cook's judgment of conviction, and ordered a new trial. The state appeals.

## II.

## STANDARD OF REVIEW

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990). When reviewing a decision granting post-conviction relief

---

Cook encountered a former roommate, D.W., at a liquor store. D.W. was staying at a local motel while her boyfriend was out of town. The two made arrangements to meet at D.W.'s motel room later that night to hang out and catch up on their lives. That evening, Cook and D.W. went to a bar to play pool and had some drinks. After some time, they returned to her motel room and sat on her bed to talk. During the course of their conversation, Cook made a sexual advance which D.W. rejected. D.W. then sought to get up off the bed, but was pulled back by Cook. Despite numerous protestations and physical resistance by D.W., Cook proceeded to forcibly remove some of her clothing and engage in sexual intercourse with her. After the assault, D.W. called two friends of her boyfriend to come get her at the motel room. When the two friends arrived, D.W. was sitting somberly in the room with Cook. After a brief conversation, Cook left and the police were called after D.W. revealed to the two friends that Cook had sexually assaulted her.

2

after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

## III.

## ANALYSIS

The state argues that the district court erred in determining that Cook's trial counsel was ineffective for failing to object to admission of the disputed testimony. Specifically, the state asserts that the district court failed to use the proper legal analysis for both claims in that it did not find that the strategic decisions not to object were the result of inadequate preparation, ignorance of the law, or other shortcoming capable of objective review.

A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State*, 121 Idaho 918, 924-25, 828 P.2d 1323, 1329-30 (Ct. App. 1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694; *Aragon*, 114 Idaho at 761, 760 P.2d at 1177. We have long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *State v. Dunlap*, 155 Idaho 345, 383, 313 P.3d 1, 39 (2013); *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994). Indeed, there is a strong presumption that trial counsel was competent and that

trial tactics were based on sound legal strategy. *Strickland*, 466 U.S. at 689; *Dunlap v. State*, 141 Idaho 50, 58-59, 106 P.3d 376, 384-85 (2004).

The district court granted Cook's petition for post-conviction relief based on his claims of ineffective assistance of counsel arising from his trial counsel's decision not to object to testimony concerning alleged threats against a witness's family and the victim's out-of-court statements. Trial counsel's lack of objection to testimony falls within the area of tactical, or strategic, decisions. *Giles v. State*, 125 Idaho 921, 924, 877 P.2d 365, 368 (1994); *State v. Chapman*, 120 Idaho 466, 469, 816 P.2d 1023, 1026 (Ct. App. 1991). Thus, Cook's trial counsel's decision not to object may not be second-guessed unless Cook presents evidence indicating that the decision was based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *See Dunlap*, 155 Idaho at 383, 313 P.3d at 39; *Howard*, 126 Idaho at 233, 880 P.2d at 263. In this case, there has been no allegation or evidence of inadequate preparation; instead, the district court determined that, because the evidence was likely inadmissible, there was no sound strategic basis for failing to object and the decision must have resulted from ignorance of relevant evidentiary law.

Effective legal representation does not require that an attorney object to admissible evidence. *State v. Aspeytia*, 130 Idaho 12, 15, 936 P.2d 210, 213 (Ct. App. 1997). Indeed, if evidence is arguably admissible, and the trial court could have properly allowed the evidence even if counsel had objected, the counsel's performance generally will not be objectively deficient. *See State v. Higgins*, 122 Idaho 590, 602-03, 836 P.2d 536, 548-49 (1992) (noting that many of trial counsel's alleged errors in failing to object involved evidence that was arguably admissible and that the decision not to object may have reflected a conscious trial strategy to avoid frequent overruling by the judge and annoyance of the jury). Thus, the standard for deficient performance when dealing with a failure to object is not whether the testimony could have been excluded, but whether the testimony could have been properly admitted. *See id*. Failing to object to arguably inadmissible testimony will generally be insufficient to overcome the presumption that the decision was based on sound legal strategy. *See Storm v. State*, 112 Idaho 718, 722, 735 P.2d 1029, 1033 (1987) (agreeing with a district court's rejection of allegations of ineffective assistance of trial counsel as a result of failure to object to allegedly inadmissible statements because there was no allegation or evidence that the attorney was ignorant of the law or inadequately prepared concerning the issue). If the testimony could not

4

have been properly admitted, then it can be reasonably inferred, absent evidence to the contrary, that the attorney's failure to object was the product of ignorance of the relevant law governing admissibility of the testimony. *See Aspeytia*, 130 Idaho at 18, 936 P.2d at 216. Accordingly, in order to determine if counsel's failure to object fell below an objectively reasonable standard of performance, we must first determine whether the testimony could have properly been admitted without error by the trial court. *See State v. Yakovac*, 145 Idaho 437, 445, 180 P.3d 476, 484 (2008); *Aspeytia*, 130 Idaho at 15, 936 P.2d at 213.

## A.     Testimony Regarding Witness Intimidation

Cook alleged in his petition that his trial counsel was ineffective for failing to object to testimony from Cook's former cellmate regarding threats Cook allegedly made against the cellmate's family. Specifically, Cook asserted that the marginal probative value of the threat testimony was substantially outweighed by the prejudicial effect.

At the preliminary hearing, Cook's cellmate testified that he had not talked to the police regarding Cook's statements to him and provided few details as to what Cook told him regarding the rape. At trial, however, the cellmate testified in more detail regarding Cook's confession to him, specifying that Cook said he had forced the victim to have sex with him by pushing her onto the bed in the hotel room and holding her down with his elbow on the back of her neck. During direct examination, the state asked the cellmate to explain the inconsistency between his preliminary hearing and trial testimony. The cellmate testified that, prior to the preliminary hearing, he was worried about his family's safety due to threats Cook had made against the cellmate's wife and daughter. According to the cellmate, Cook threatened that "somebody would follow" the cellmate's wife and "she would be done just the same that [the victim] was done" if the cellmate testified against him, seemingly indicating that the cellmate's wife would be raped. The cellmate further testified Cook said that Cook's girlfriend would follow the cellmate's wife, but did not say who would execute the threatened rape. Cook also allegedly threatened that the cellmate's wife and daughter "would be taken care of," suggesting that they may be murdered. The cellmate further testified that Cook said he wanted to escape from jail "so he could make sure that nobody was left to testify against him." Cook also allegedly said he was going to "stop [the victim] by taking her life" because "her testimony would really hurt him."

Because the threat testimony consisted of the statements of a party opponent, the testimony is not hearsay. I.R.E. 801(d)(2)(A). However, even nonhearsay testimony may be

5

excluded on other grounds, such as if the testimony constitutes propensity evidence under I.R.E. 404(b). Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct. App. 1987). Such evidence may be admissible for a purpose other than that prohibited by I.R.E. 404(b). *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). Trial courts are required to undertake a two-tiered analysis to determine whether other-acts evidence is inadmissible propensity evidence under Rule 404(b) or whether the evidence could be admitted for some other purpose. *State v. Sheldon,* 145 Idaho 225, 229, 178 P. 3d 28, 32 (2008); *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). The first tier requires a court to determine whether the evidence is relevant to a material disputed issue concerning the crime charged. *Sheldon,* 145 Idaho at 229, 178 P. 3d at 32; *Atkinson*, 124 Idaho at 819, 864 P.2d at 657. Whether evidence is relevant is an issue of law over which we exercise free review. *Atkinson*, 124 Idaho at 819, 864 P.2d at 657.

The other purposes for which evidence of other bad acts may be admissible include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. I.R.E. 404(b). This also includes evidence of consciousness of guilt, which threats against witnesses are relevant to show. *See State v. Pokorney*, 149 Idaho 459, 463, 235 P.3d 409, 413 (Ct. App. 2010) (holding that evidence of a defendant's efforts to influence witness testimony, such as by intimidating a witness or offering to compensate a witness, may be relevant to demonstrate consciousness of guilt). Indeed, the federal courts have uniformly recognized that threatening a witness is relevant to show consciousness of guilt. *See United States v. Begay*, 673 F.3d 1038, 1046 (9th Cir. 2011) (stating that a defendant's threat against a witness "was admissible to show [the defendant]'s consciousness of guilt"); *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 897 (9th Cir. 1996) (noting that federal case law uniformly held that "threats are relevant to consciousness of guilt"). As a result, testimony regarding Cook's alleged threats against a witness's family and the victim was relevant to show consciousness of guilt. In addition, the threat evidence was relevant to the cellmate's credibility as it explained why his trial testimony regarding Cook's confession differed from his preliminary hearing testimony.

The second tier of the I.R.E. 404(b) analysis requires a court to engage in the I.R.E. 403 balancing test: whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *Sheldon*, 145 Idaho at 229, 178 P. 3d at 32;

6

*Atkinson*, 124 Idaho at 819, 864 P.2d at 657. A trial court's Rule 403 decision will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). Thus, for a post-conviction claim regarding a failure to object to testimony, the petitioner must show that, had trial counsel objected, a decision by the trial court to admit the evidence after performing the Rule 403 balancing test would have been an abuse of discretion.

Here, the district court erred in concluding that the threat testimony would not have been admissible. The district court determined that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice, as the testimony was highly inflammatory. However, this is not the proper analysis. The district court should have determined whether it would have been an abuse of discretion for the trial court to have admitted the evidence over the hypothetical objection of Cook's trial counsel.

Even assuming that the district court's conclusion implied that it would have regarded admission of the testimony as an abuse of discretion, this, too, was error. Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to the party's case, which the threat evidence certainly was. Instead, the rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis. *Pokorney*, 149 Idaho 459, 465, 235 P.3d 409, 415; *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct. App. 1994). In this case, the threat evidence was probative of Cook's consciousness of guilt, as indicated by his expressed desire to silence the victim and his direct effort to influence his former cellmate's testimony in a manner that benefited Cook. It also served to explain the discrepancy between the cellmate's pretrial and trial testimony. Although the alleged threat could have been indicative of Cook's desire to stop his former cellmate or the victim from testifying in support of a false accusation of rape, the existence of an alternate explanation of testimony goes to the weight of the testimony, not its admissibility. *See Pokorney*, 149 Idaho 459, 463-64, 235 P.3d 409, 413-14. Thus, the threat testimony had significant probative value.

This probative value was not substantially outweighed by the danger of any unfair prejudice. The severity of the threats--alleging Cook would have someone rape the cellmate's wife and murder the cellmate's wife and daughter--was, indeed, prejudicial to Cook in that it cast him as a potentially violent person intent on concealing his crime by silencing the victim and a

7

prospective witness. This was damaging to Cook's case, but it was so because of the probative value of the evidence, which strongly suggested Cook's consciousness of guilt and that he was attempting to prevent incriminating testimony. The threat testimony did not touch on any collateral issue or irrelevant matter, addressing only Cook's attempt to influence testimony in the current case. Indeed, it was not unfair to allow the jury to know that Cook had attempted to influence evidence in the case by making threats against the victim and a potential witness's family. On the contrary, it would have been unfair to allow Cook to benefit from using threats to undermine the integrity of his trial by having any testimony of those threats excluded as unfairly prejudicial. This is especially true given that the threats allegedly influenced the witness's pretrial testimony, creating a ground for impeachment that would not have existed otherwise.

We conclude that the risk of any possible unfair prejudice created by the threat testimony did not substantially outweigh its significant probative value. Indeed, there is no indication that, in light of the other evidence presented during the trial, the jury made its decision in this case on any improper inferences that might have arisen from the threat testimony. Thus, it would not have been an abuse of discretion for a trial court to have struck the Rule 403 balancing test in favor of admission of the testimony. As a result, we assume that Cook's trial counsel's decision not to object was based on sound legal strategy, so the district court erred in holding that Cook's trial counsel provided ineffective assistance on this basis.

## B. Victim's Out-of-Court Statements

Cook also argued that the testimony of two friends of the victim's boyfriend regarding the victim's statements that she was raped and how the rape had occurred constituted inadmissible hearsay. The statements were made approximately thirty to forty-five minutes after the rape occurred. One of the friends testified to the victim's specific statements--she told him that Cook "was trying to hit on her and kiss her and . . . lay on her," Cook had "raped her," Cook "forced sex on her," and Cook had "grabbed her neck." The other friend testified more generally that the victim conveyed that she was raped without specifying what she actually said.

Assuming--without deciding--that this testimony was inadmissible hearsay and failure to object was deficient representation, we conclude that Cook was not prejudiced by its admission. To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694; *Aragon*, 114 Idaho at 761, 760 P.2d at 1177. A reasonable probability is a

8

probability sufficient to undermine confidence in the outcome. *Hinton v. Alabama*, ___ U.S. ___, ___, 134 S. Ct. 1081, 1089 (2014); *Dunlap*, 155 Idaho at 383, 313 P.3d at 39; *Milburn v. State*, 130 Idaho 649, 659, 946 P.2d 71, 81 (Ct. App. 1997). In other words, a petitioner must show that the deficient conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Ivey v. State*, 123 Idaho 77, 80, 844 P.2d 706, 709 (1992); *Matthews v. State*, 136 Idaho 46, 49, 28 P.3d 387, 390 (Ct. App. 2001); *see also Strickland*, 466 U.S. at 687. This requires a substantial, not just conceivable, likelihood of a different result. *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 792 (2011); *Dunlap*, 155 Idaho at 383, 313 P.3d at 39.

Here, there is not a substantial likelihood that, but for Cook's trial counsel's failure to object to the alleged hearsay testimony, the outcome of the trial would have been different. The victim had already testified and was subject to cross-examination regarding her statements to the friends, including the statements to which they testified. Thus, any incriminating evidence was already before the jury prior to the friends' testimony. The net prejudice against Cook of his trial counsel's failure to object to this testimony was the corroborative effect of the alleged hearsay statements, which may have bolstered the victim's credibility with the jury. *See State v. Jones*, 125 Idaho 477, 488, 873 P.2d 122, 133 (1994). However, this alone is insufficient to show a reasonable probability that the jury's verdict would have been different without the corroborative statement, as the jury had ample opportunity to discern the victim's credibility and weigh it against Cook's. *Cf. id.* (holding that, under the more stringent harmless error standard, erroneous admission of evidence of prior consistent statements regarding an uncharged murder was harmless beyond a reasonable doubt, as the jury had ample time to judge the witness's credibility against the defendant's).

Indeed, even without the challenged testimony, the evidence that remained was sufficient to maintain confidence that the trial produced a just result and the outcome would have been the same. For instance, the victim's testimony was most consistent with the physical evidence found at the scene. Evidence of a smudged shoe print on one of the bedsheets was introduced along with the victim's testimony that she never had her shoes on the bed. This supported her claim that Cook initially attacked her on the bed while both she and Cook were fully clothed and undermined Cook's assertion that the consensual sex happened after they both had undressed. There was also semen found on the victim's jeans and underwear, which corroborated the

victim's testimony that she believed Cook had ejaculated and undermined his assertion that he had not. Additionally, unchallenged testimony from Cook's former cellmate and the friends further corroborated the victim's account of events and supported the jury's verdict. The former cellmate testified that Cook confessed that the sex was not consensual and admitted to holding the victim down with his elbow on the back of her neck while he raped her, which was consistent with the victim's account of the rape and was a detail not known to the public. The friends also provided nonhearsay testimony regarding the victim's abnormal and upset demeanor on the phone immediately after the rape and when they arrived shortly thereafter. Indeed, the victim's call to the friends--who were good friends with her boyfriend at the time--immediately following the rape would defy logic if the encounter had been consensual and the victim was concerned only with concealing it from her boyfriend, as Cook alleged. Thus, even absent the challenged testimony, there was ample evidence upon which the jury could have based a guilty verdict and we are confident that the outcome in Cook's case would have remained the same. Accordingly, the district court erred in holding that Cook had shown a reasonable probability of a different outcome.

## IV.
## CONCLUSION

The district court erred in finding that Cook's trial counsel had provided ineffective assistance of counsel for not objecting to the testimony regarding the threats against a witness and the victim's out-of-court statements. Thus, Cook is not entitled to post-conviction relief. Accordingly, we vacate the district court's judgment granting Cook's petition for post-conviction relief. No costs or attorney fees are awarded on appeal.

Judge LANSING and Judge GRATTON, **CONCUR.**