IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 42116

| | | |
|---|---|---|
| PONY LEO JACKSON, | ) | 2015 Unpublished Opinion No. 504 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: May 26, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Clark County. Hon. Gregory S. Anderson, District Judge.

Judgment denying post-conviction relief, affirmed.

Sara B. Thomas, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

LANSING, Judge

Pony Leo Jackson appeals from the district court's judgment denying relief on Jackson's post-conviction action for ineffective assistance of defense counsel in his underlying criminal trial for lewd conduct with a minor. He asserts that the evidence presented in this post-conviction action establishes that his criminal defense attorney provided ineffective assistance when he failed to object to the prosecution's references to other sex crimes purportedly committed by Jackson.

## I.

## BACKGROUND

In prior, unrelated criminal proceedings, Jackson was arrested and convicted on child pornography charges. As part of the investigation, law enforcement discovered accounts in

1

Jackson's diary that led them to believe that he likely had molested children. Accordingly, officers used the news media to ask members of the public to come forward if Jackson had molested them. After learning of that broadcast, K.W. reported to police that Jackson, her uncle, had molested her sixteen years earlier when she was four years old.

Based upon K.W.'s report, Jackson was charged with two counts of lewd conduct with a minor under sixteen years of age, Idaho Code § 18-1508. In advance of the trial, the prosecutor sought guidance from the court concerning his desire to explain to the jury K.W.'s sixteen-year delay in reporting the offenses. That is, the prosecutor wanted to inform the jury how K.W. was prompted to report the crime to police when she did. The prosecutor recognized that some portions of that explanation might be inadmissible and asked for guidance:

> State: Okay. The other issue I've got is, [K.W.], she is now 21. This happened when she was four years old. The way this came about is, is that a couple of years ago, in 2007, she was watching the news and Pony Jackson had been arrested for child pornography and the news said if anyone out there has been molested by Pony Jackson, would you please contact the law enforcement. I mean, that's kind of my paraphrasing of it.
>
> And so my question is, is I'm sure [defense counsel's] going to object if that--to that kind of information coming in; and I just--I want to know the boundaries on this. Again, I don't want any mistrials or appealable issues. Do you want me to avoid that issue unless [defense counsel] raises it? I mean, I think I can get--I think I can say, "Did you contact law enforcement and for what reason did you contact law enforcement," without getting into the--
>
> Court: Right. If you can, I mean, that's going to be much better. It's going to be problematic if she's--if this evidence of charges for child pornography comes in because that can be unfairly prejudicial. I mean, certainly she can testify that she became aware that he was involved. Well--
>
> State: Yeah. I mean, how do we--how does the jury understand that all of a sudden she--because I think part of [defense counsel's] defense is that why wait all this time and then all of a sudden you do it. So how do I--
>
> Court: Well, she can testify--and this may take some coaching on your part so we don't get into a problem--but that she saw a report about Pony Jackson and--
>
> State: But don't mention it was on child pornography; she saw a report?
>
> Court: Yeah, it wasn't based on child pornography issues but that . . . there was a law enforcement inquiry regarding Pony Jackson and that prompted her to come forward, something general and innocuous like that. Certainly she

2

> can talk about this was generated by a law enforcement inquiry, but if she can stay away from the charges, we're going to be a lot better off.

After this exchange, counsel explained that he would convey these limitations to the victim. At that point, the court ruled:

> [T]he evidence of prior crimes and prior acts can come in if the door gets opened on that. But I mean, right now that--you want to treat that as being unfairly prejudicial, the prejudice doesn't outweigh the probative value."[1]

Soon thereafter, in his opening statement to the jury, the prosecutor described the events that led K.W. to contact police:

> If I remember right, [K.W.] . . . told her mother as I recall; but it wasn't until 2007, in January of 2007, when there was a report on the news that anybody who had been molested by Pony Jackson, if they would contact the sheriff's office or law enforcement office had wanted them to do that.

Jackson's defense attorney did not object. Then, during K.W.'s testimony, when the prosecutor asked what prompted her to report the alleged crimes to police she replied, "My mom called me and told me that on the news they had said that Pony Jackson had been arrested and that anybody else that had been molested by him, to please come forward." Again, the defense attorney did not object. The jury found Jackson guilty.

Jackson appealed his conviction and argued, *inter alia*, "that the prosecutor violated a pretrial order that precluded the State from disclosing details of the news broadcast indicating other criminal activity by Jackson." *State v. Jackson*, 151 Idaho 376, 378, 256 P.3d 784, 786 (Ct. App. 2011). Jackson argued that, notwithstanding the lack of objection below, he was entitled to relief on direct appeal because the State's disclosure of Jackson's other alleged criminal activity amounted to fundamental error. This Court determined that Jackson had not demonstrated fundamental error because his claim was one of evidentiary error, not a constitutional violation as required for fundamental error review. *Id.* at 380, 256 P.3d at 788.

---

[1] We acknowledge that either the trial court misspoke when it applied the Idaho Rule of Evidence 403 analysis or the trial transcript is in error. The transcript indicates that the court said that the evidence was "unfairly prejudicial" but also "the prejudice doesn't outweigh the probative value." Clearly, if the court had meant that prejudice did not outweigh the probative value, the evidence would not have been excluded. From the record as a whole, it is clear that either the trial court misspoke or the transcript inaccurately reflects the court's remarks.

3

Thereafter, Jackson filed this action for post-conviction relief. His petition alleged at least eleven claims of ineffective assistance of counsel, but he pursues only two of them on appeal. Both flow from the prosecution's alleged violations of the trial court's order prohibiting any mention of "prior crimes and prior acts." Jackson's petition alleged that his defense counsel should have objected when the prosecutor referenced the news report in his opening statement and again when the prosecutor elicited further references to the news report during K.W.'s testimony.

The case proceeded to an evidentiary hearing, after which the court concluded that Jackson was not entitled to post-conviction relief for three reasons. First, it concluded that the prosecutor had not violated the trial court's order. The post-conviction court reasoned that the trial court had excluded only the mention of child pornography charges and the prosecutor never discussed those charges. Second, the post-conviction court held that even if defense counsel had objected based on I.R.E. 403 or 404(b), the prior charges could have been admitted into evidence because they were not used to show propensity but to explain the long period between the alleged child molestation and K.W.'s report. Third, it concluded that the decision to not object was a reasonable strategic decision of defense counsel because objecting would have called more attention to the other criminal charges.

Jackson appeals. He contends that (1) the State did violate the trial court's pretrial order, (2) the evidence of other crimes was not admissible, and (3) the failure to object was not strategic.

## II.

## ANALYSIS

To prevail on an ineffective assistance of counsel claim, a post-conviction petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). Deficiency is shown if the attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 692; *Aragon*, 114 Idaho at 761, 760 P.2d at 1177. Tactical or strategic decisions of trial counsel will not be

4

second-guessed unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994).

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings if they are supported by competent and substantial evidence. *Johnson v. State*, 156 Idaho 7, 10, 319 P.3d 491, 494 (2014). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

## A.    The State Violated the Court's Order Limiting References to Collateral Criminal Conduct

The post-conviction court held, and the State on appeal argues, that the trial court's order preceding Jackson's criminal trial narrowly prohibited only reference to Jackson's prior conviction for possession of child pornography, and because no reference was made to child pornography charges, the order was not violated. To support this assertion, the State refers to a motion in limine that was filed months before the criminal trial. In that motion, brought pursuant to Idaho Rule of Evidence 404(b),[2] Jackson sought exclusion of his prior conviction for the possession of child pornography and mentioned law enforcement's media inquiry. At a hearing several days before trial, the court reserved ruling on the motion. According to the State, the trial court's subsequent order regarding the news stories amounted to solely a ruling on the motion in limine.

This argument is not supported by the record as a whole. The above-quoted transcript of the colloquy shows that the trial court's order was made in response to an inquiry initiated by the State on the first day of trial. The prosecutor stated, "I want to know the boundaries on this. . . . I mean, I think I can get--I think I can say, 'Did you contact law enforcement and for what

---

[2]    Rule 404(b) prohibits "evidence of other crimes, wrongs or acts . . . to prove the character of a person in order to show that the person acted in conformity therewith."

reason did you contact law enforcement.'" To the extent the issue had been raised previously, by Jackson, the ruling on the motion had been deferred. The State asked the court for guidance and to explain what it could and could not say. This request broadened the question presented to the court and invited a ruling on a broader issue.

Moreover, the court's ruling was plainly broader than the State now asserts. The court did not prohibit only the mention of child pornography; it prohibited reference to *any* allegations of criminal conduct. It suggested that the State only adduce evidence that "there was a law enforcement inquiry regarding Pony Jackson and that prompted [K.W.] to come forward," and "stay away from the charges." Moreover, it directed counsel to limit the disclosure to the "general and innocuous." When giving the basis for its ruling, the court held that "prior crimes and prior acts" should be treated as "unfairly prejudicial." Nothing in the ruling shows that the prohibition of "prior crimes and prior acts" somehow permitted evidence or implication that Jackson had molested other children.

Because the trial court's ruling was broad and prohibited any mention of any collateral criminal charges or allegations, the challenged portions of the prosecutor's opening statement and of K.W.'s testimony violated the order. The prosecutor's statement that police wanted to hear from "anybody who had been molested by Pony Jackson" implies that he was then under investigation for that type of crime. K.W.'s testimony even more clearly indicated that Jackson was suspected of or charged with other child molestations when she said that the news report requested "that *anybody else* that had been molested by him, to please come forward." (Emphasis added.) Accordingly, we are constrained to hold that there is no substantial evidence to support the district court's finding below that the State did not violate the order prohibiting mention of "prior crimes" or "charges" and requiring the of use "general and innocuous" language.

## B.     The Evidence Was Not Otherwise Admissible

The post-conviction court also held that the testimony implying that Jackson had molested other children could have been admitted properly over an I.R.E. 404(b) and 403 objection, so that timely objection by defense counsel would have been futile.[3] This holding

---

[3]     The post-conviction court also appears to have held that Jackson did not plead unfair prejudice in his post-conviction petition. Even assuming that such a pleading deficiency would preclude relief after an evidentiary hearing at which prejudice is proven, we find no factual basis for this ruling. Jackson's pro se petition referred the reader to his supporting affidavit which "set

6

resulted from the post-conviction court's view that the order was not violated because the order should be construed narrowly. Accordingly, under the post-conviction court's view of the facts, it was free to rule on the admissibility of the evidence for the first time. As stated above, we conclude that the ruling of the trial court in the criminal case prohibited any mention of other charges or allegations. Therefore, the post-conviction court was not ruling on the issue for the first time. Rather, the post-conviction court's ruling amounts to a reversal of the order of the criminal court, which held that the evidence was inadmissible and "unfairly prejudicial."

Idaho Rule of Evidence 403 authorizes the exclusion of relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice." That rule "protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." *Cook v. State*, 157 Idaho 775, 780, 339 P.3d 1179, 1184 (Ct. App. 2014). Certainly, in a trial for a sex offense, irrelevant (or only marginally relevant) evidence that the defendant committed another sex crime may be unfairly prejudicial by creating jury bias and an assumption that if the defendant committed such an offense before, he probably committed the charged offense. As our Supreme Court has recognized, many people share the "unstated belief that sexual deviancy is a character trait of especially powerful probative value for predicting a defendant's behavior." *State v. Johnson*, 148 Idaho 664, 670, 227 P.3d 918, 924 (2010) (quoting *State v. Field*, 144 Idaho 559, 569-70, 165 P.3d 273, 283-84 (2007) (quoting D. Craig Lewis, *Idaho Trial Handbook* § 13.9 (1995))).

---

forth his claims." In that affidavit, the heading asserted that K.W.'s testimony contained "inadmissible prejudicial evidence"; in the body of the petition, he asserted that "the prejudicial effect outweighed any probative value"; and he described the evidence as "prejudicial" at least five times. The post-conviction court appears to have concluded that this was insufficient because Jackson failed to explain why the prejudice was "unfair." Certainly, I.R.E. 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of *unfair prejudice*." (Emphasis added.) And, various courts, at various times have explained the distinction between evidence that is prejudicial in the sense that it tends to prove the defendant's guilt from evidence that results in "unfair prejudice." *See, e.g.*, *Cook v. State*, 157 Idaho 775, 339 P.3d 1179, 1184 (Ct. App. 2014) ("Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to the party's case. . . . Instead, the rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis."). Here, it is quite clear that Jackson was complaining about unfair prejudice because he cited the trial court's ruling describing the evidence as "unfairly prejudicial."

The trial court in Jackson's criminal case recognized that it was relevant and proper for the State to present some evidence explaining why K.W. took so long to come forward. Accordingly, it held that the State could show "there was a law enforcement inquiry regarding Pony Jackson and that prompted her to come forward." However, it held that any additional reference to the specific charges and allegations was not incrementally more probative. The criminal trial court also held that any reference to specific charges or allegations of sex crimes was unfairly prejudicial. This balancing of probative value against the risk of unfair prejudice was well within the criminal court's discretion and has not been shown to be erroneous.[4] We conclude that the post-conviction court's decision amounted to an impermissible overruling of a correct evidentiary decision made by the criminal court.

## C.     The Failure to Object Was Not Strategic

As an alternative basis for holding that Jackson had not proven ineffective assistance of counsel, the post-conviction court held that the defense attorney's failure to object was a strategic decision. It reasoned that (1) counsel had only two options: object or do nothing; and (2) an objection would only have emphasized the objectionable remarks to the jury.

We disagree. First, the defense attorney testified at the evidentiary hearing and did not claim any such strategy, so there is no evidence supporting the district court's finding. Second, even if it had been a reasonable and informed strategy to refrain from objecting *during the opening statement*, thereby emphasizing the issue before the jury, that does not excuse defense counsel's failure to object in any way, at any time. After conclusion of the prosecutor's opening statement, and again after K.W.'s objectionable testimony, and outside the jury's presence, defense counsel could have moved for a mistrial. Further, he should have recognized that the prosecutor was likely to adduce evidence supporting the claim he made in his opening statement, as "the purpose of opening remarks is "to inform the jury of the issues of the case and briefly outline the evidence each litigant intends to introduce to support his allegations or defenses." *State v. Koch*, 157 Idaho 89, 95, 334 P.3d 280, 286 (2014) (quoting *State v. Griffith*, 97 Idaho 52, 56, 539 P.2d 604, 608 (1975)). After the opening statement, defense counsel could have sought an order precluding further reference to prior charges. By doing so, he could have prevented the

---

[4]     In light of this determination, we need not address whether the nature of the charges for which Jackson was under investigation when the news report was issued bears any probative value at all to be weighed against the unfair prejudice.

8

admission of K.W.'s far more damaging testimony, where she told the jury that police were looking for "anybody else" that had been molested by Jackson and thereby clearly implied that Jackson was alleged to have molested other children. Neither the post-conviction court nor the State argues that there was any strategic justification for defense counsel's failure to object or move for a mistrial later, outside of the presence of the jury. Accordingly, we conclude that the evidence does not support the post-conviction court's finding that defense counsel's choice to never object was tactical or strategic. Rather, an "objective evaluation" shows that the decision to never raise the issue amounted to deficient performance.

### D.     Jackson Has Not Shown That He Was Prejudiced

As stated above, a petitioner claiming ineffective assistance of counsel must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 692; *Aragon*, 114 Idaho at 761, 760 P.2d at 1177. The post-conviction court concluded that Jackson failed to show prejudice. The post-conviction court held that the standard was not met because "Jackson did not argue that but for defense counsel's deficient performance . . . the result of the trial would be different." We conclude that this determination is inapposite. At an evidentiary hearing, the petitioner's burden is to present *evidence* of prejudice, regardless of whether it is addressed in pre- or post-hearing *argument*. Regardless, in this case Jackson's pro se petition cited the *Strickland* standard, argued that the attorney's error "prejudiced him," and asserted his trial attorney's conduct resulted in a denial of his right to a fair trial. Likewise, at the evidentiary hearing, an expert witness, who understood the elements of a claim for post-conviction relief, testified that the failure to object resulted in prejudice. Neither recited the exact text of our prejudice standard, but a person need not use "magic words" to prevail in a post-conviction action. The pleadings and arguments made by Jackson were sufficient to raise the issue. However, this Court "may affirm a lower court's decision on a legal theory different from the one applied by that court." *Baker v. State*, 142 Idaho 411, 420, 128 P.3d 948, 957 (Ct. App. 2005). Therefore, we address whether the evidence presented at the hearing established that Jackson was prejudiced by the attorney's deficient performance.

We conclude that it does not. If Jackson's attorney had timely objected, the State's oblique references to his other misconduct may have been cured and the second reference may not have been made at all. But preventing or mitigating the impact of those references would not

9

have affected the trial outcome because numerous other, more specific references to Jackson's prior sexual conduct were introduced into evidence. When cross-examining the victim's mother, Jackson's attorney elicited testimony that Jackson had been accused of molesting another child, K.W.'s cousin. Defense counsel also called as a defense witness a police officer who had investigated K.W.'s allegations. He testified that he had received reports that Jackson had exposed himself to another girl, K.W.'s cousin. Finally, defense counsel called K.W., the alleged victim, and elicited her testimony that she believed Jackson had molested the cousin, explaining her belief that Jackson had "touched me also like he'd done to her."[5]

Because of this evidence, the jury would have been fully aware of reports that Jackson had engaged in sexual conduct with another minor even if the State's oblique references in the opening statement and in K.W.'s direct testimony had not occurred. Those mere implications of prior bad acts were of little moment once particularized descriptions of uncharged sexual misconduct had been adduced. Accordingly, Jackson did not demonstrate that his attorney's failure to object to the prosecutor's actions adversely impacted the outcome of his case. Because Jackson did not prove prejudice from the deficient performance that he complains of on appeal, we must affirm the district court's denial of relief.

### III.

### CONCLUSION

The evidence demonstrated that the court in Jackson's criminal trial prohibited any mention of Jackson's prior, unrelated sexual misconduct and that the State violated the order. However, Jackson has failed to show prejudice because the jury heard far more damaging evidence of his prior, sexual misconduct with a minor. Therefore, the judgment of the post-conviction court denying relief on Jackson's petition is affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR.**

---

[5] Below, Jackson claimed that his attorney provided ineffective assistance by adducing this testimony from the officer and K.W. The post-conviction court rejected that claim. It reasoned that counsel had strategic reasons to adduce this testimony. Jackson does not challenge that finding on appeal.